UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

LOUIS T. AGE,

    Petitioner

VERSUS

UNITED STATES OF AMERICA,

    Respondent

CRIMINAL ACTION

NO. 11-105-JJB-EWD

## RULING

This matter is before the Court on a Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255, (Doc. 512) brought by the petitioner, Louis T. Age. The respondent, the United States of America (the "Government"), filed a response (Doc. 530). Subsequently, the petitioner filed an addendum (Doc. 531) and a supplement (Doc. 537), to which the Government responded (Docs. 534 & 543). Oral argument is unnecessary. For the reasons stated herein, the petitioner's Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255, (Doc. 512) is **DENIED**.

**I.**    **BACKGROUND**

On August 9, 2012, Louis Age ("petitioner"), Verna Age ("Ms. Age"), Ayanna Alverez ("Ms. Alverez"), and another were indicted on one count of Conspiracy to Commit Healthcare Fraud, in violation of 18 U.S.C. § 1349, and one count of Conspiracy to Defraud the United States and Pay and Receive Healthcare Kickbacks, in violation of 18 U.S.C. § 371.[1] *Superseding Indictment*, Doc. 63. On August 16, 2012, the petitioner pleaded not guilty to both counts of the Superseding Indictment. Doc. 75. The petitioner proceeded to trial on October 1, 2012, where he

---

[1] Ms. Age and Ms. Alverez were also indicted on one count of committing Healthcare Fraud, in violation of 18 U.S.C. § 1347. *Superseding Indictment*, Doc. 63.

1

was represented by attorney James A. Gray ("Gray"). Doc. 143. After the jury could not reach a verdict, a mistrial was declared and the petitioner's retrial was set for January 22, 2013. Doc. 166.

Prior to the retrial, Gray filed a motion to withdraw, and attorney Hilliard C. Fazande ("Fazande") moved to enroll as the petitioner's counsel. Docs. 176 & 183. On January 9, 2013, the Court conducted an evidentiary hearing on the motions—the Court granted Gray's motion to withdraw and denied Fazande's motion to enroll. Doc. 195. The petitioner's retrial was reset for March 20, 2013, and the petitioner was ordered to have new counsel enrolled by January 22, 2013. *Id.* Attorney Michael W. Hill ("Hill") subsequently enrolled as the petitioner's counsel. Doc. 199.

On March 12, 2013, the Court granted the petitioner's motion to continue the retrial;[2] the retrial was continued from Wednesday, March 20, 2013, until Friday, March 22, 2013. Doc. 224. After a five day trial, the jury found the petitioner guilty of both counts charged in the Superseding Indictment. *Jury Verdict*, Doc. 249. On August 15, 2013, the Court sentenced the petitioner to 180 months' imprisonment.[3] Doc. 343.

The petitioner appealed his conviction to the Fifth Circuit on the following grounds: (1) The district court erred in admitting Crimes or Other Acts evidence; and (2) The district court erred in disqualifying the petitioner's counsel of choice, Fazande, from enrolling as counsel of record. *United States v. Louis T. Age*, 614 F. App'x 141 (5th Cir. 2015) (per curiam). On June 5, 2015, the Fifth Circuit affirmed the petitioner's conviction. *Id.* at 145. Thereafter, on October 1, 2015, the petitioner timely filed the present motion. Doc. 512.

---

[2] The motion was filed based on the deteriorating health of Hill's father. Doc. 213.
[3] The Court sentenced the petitioner to 120 months' imprisonment for conspiring to commit healthcare fraud, in violation of 18 U.S.C. § 1349, and to 60 months' imprisonment for conspiring to defraud the United States and pay and receive healthcare kickbacks, in violation of 18 U.S.C. § 371. *J.*, Doc. 347. The Court ordered the imposed sentences to run consecutively. *Id.*

**II.      28 U.S.C. § 2255**

Under 28 U.S.C. § 2255, a federal prisoner may file a motion to vacate, set aside, or correct his sentence on the "ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). According to the Fifth Circuit, "[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on a direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Acklen*, 47 F.3d 739, 741 (5th Cir. 1995).

**III.      DISCUSSION**

**A.      The Petitioner's Alleged Grounds for Relief**

The petitioner's motion sets forth several allegations to support his claim for relief under 28 U.S.C. § 2255. *See Pet'r's Supp. Mem.*, Doc. 512-2. After reviewing the parties' briefs, the Government's categorization of the petitioner's allegations is accurate and provides the best framework for discussing the various claims.[4]

**1.      *Sixth Amendment Violation***

The petitioner argues that his Sixth Amendment rights were violated when the Court disqualified Fazande from representing him based on actual or potential conflicts of interest. *Id.* at 4. According to the petitioner, the Court disqualified Fazande "without any supporting evidence," and "did not exercise due diligence" in making its determination. *Id.* The petitioner also alleges that the Government, through *ex parte* communications with the Court, provided false information to the Court regarding Fazande being the subject of a sealed indictment. *Id.* at 6–7.

---

[4] Pro se § 2255 motions are construed liberally. *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993). In this case, the petitioner's pro se motion does not set forth his allegations in a well-organized or well-articulated manner. The Government's response, however, liberally construes the petitioner's arguments and, in doing so, assists the Court in its analysis.

3

### 2.     *Prosecutorial Misconduct – Withholding Exculpatory Evidence*

In his motion, the petitioner argues that the Government engaged in prosecutorial misconduct by withholding exculpatory evidence from the defense. *Id.* at 8–13. Specifically, the petitioner argues that the Government failed to disclose Dr. Kirkpatrick's indictment relating to healthcare fraud perpetrated through Acute Care Center. *Id.* at 10. The petitioner alleges that Ms. Alverez owned Acute Care Center, which employed Dr. Kirkpatrick and Ms. Johnson. *Id.* at 11. Therefore, according to the petitioner, Ms. Alverez and Ms. Johnson were unindicted co-conspirators in the fraud that was the subject of Dr. Kirkpatrick's indictment. *Id.* at 12. Accordingly, this evidence shows that Ms. Alverez and Ms. Johnson lied on the stand because the Government was holding another conviction over their heads, and by withholding such evidence, the Government violated the requirements of *Brady v. Maryland*.[5] *Id.* at 8–13.[6]

In the petitioner's addendum, he argues that another piece of exculpatory evidence was withheld—evidence that the petitioner's name was taken off of the company account in late 2010. *Pet'r's Addendum* 1, Doc. 531. According to the petitioner, this evidence shows that Ms. Alverez perjured herself during the trial. *Id.*

### 3.     *Ineffective Assistance of Counsel*

In his motion, the petitioner argues that his attorney, Hill, provided ineffective assistance of counsel during the petitioner's retrial because he was not prepared to try the case. The petitioner discusses several of Hill's actions to support this claim. First, the petitioner alleges that Hill

---

[5] 373 U.S. 83 (1963). According to the Government, the petitioner's *Brady* argument is properly interpreted as a violation of *Giglio v. United States*, 405 U.S. 150 (1972). *Gov't's Resp.* 10 n.7, Doc. 530.

[6] The Court has reviewed the indictment of Dr. Kirkpatrick, *United States v. Komandu, et al.*, 10-cr-105-BAJ-SCR, Docs. 1, 34, and finds that the petitioner's argument is premised on an incorrect statement of the facts. The indictment at issue involved alleged fraud perpetrated through Alpha Medical Solutions, not Acute Care Center. *Id.* According to the Government, "Ms. Alverez was not involved with Alpha Medical Solutions or the charges related to Criminal Case Number 10-00105-BAJ." *Gov't's Resp.* 10 n.8, Doc. 530. No evidence has been presented to the contrary.

4

"canceled meeting after meeting, and other meetings were cut short." *Pet'r's Supp. Mem.* 14, Doc. 512-2. Second, the petitioner alleges that Fazande hired a handwriting and accounting expert, but that Hill never met with these experts and did not file notices to use their testimony at trial. *Id.* Third, the petitioner states that Hill suffered a "small stroke" during the trial and alleges that he had a drinking problem. *Id.* Fourth, the petitioner argues that Hill received information to discredit Ms. Alverez during trial, such as her drug use and spending habits, but did not use this information during the trial. *Id.* at 15. Fifth, according to the petitioner, Hill failed to question investigators about (1) the Government's opening statement that South Louisiana Home Health Care, Inc. ("SLHH") was opened in 2005 to defraud Medicare, and (2) proof from Medicare about certain cases used to determine loss. *Id.* at 16. Finally, the petitioner alleges that Hill never presented (1) the petitioner's earnings from SLHH, (2) SLHH's "spotless record," and (3) that no fraud was committed in 2005 and 2006. *Id.*

In the petitioner's supplement he alleges ineffective assistance of counsel at the sentencing stage. *Pet'r's Suppl.*, Doc. 537. Specifically, the petitioner alleges that Hill failed to object to the presentencing investigation report ("PSIR") and the sentencing enhancements contained therein. *Id.* According to the petitioner, although he told the judge he reviewed the PSIR prior to sentencing, he actually did not review the PSIR until May 5, 2016. *Id.* at 2.[7] The petitioner's argument for ineffective assistance of counsel is based off his allegation that the $17.1 million loss amount is incorrect because there is nothing in the record indicating that fraud occurred in 2005 or 2006. *Id.* at 3; *see Pet'r's Supp. Mem.* 22–24, Doc. 512-2 (making the same argument).[8]

---

[7] The petitioner's sentencing hearing was conducted on August 15, 2013. Doc. 343. At that time, both Hill and the petitioner affirmatively stated that they received and reviewed the PSIR. *Sentencing Hr'g Tr.* 4, Doc. 428. "Petitioner's prior representations in Court carry great weight and are presumed to be truthful." *Gov't's Resp. to Pet'r's Suppl.* 8, Doc. 543 (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

[8] According to the Government, although Hill did not object to the PSIR enhancements, he did object to the preliminary order of forfeiture arguing that "the Government has not demonstrated any links between the [petitioner's] conduct

### 4. *Prosecutorial Misconduct – Misleading Jury & Offering False Evidence*

The petitioner also alleges that the Government engaged in prosecutorial misconduct by misleading both the grand jury and the petit jury. *Pet'r's Supp. Mem.* 17, Doc. 512-2. Specifically, the petitioner alleges that the Government offered testimony before the grand jury that Ms. Age co-owned SLHH with the petitioner, when in fact the petitioner acquired full ownership of SLHH in 2002. *Id.* Additionally, the petitioner argues that the Government misstated facts in its opening statement by stating that SLHH was established in 2005 with the intent to defraud the Government, when SLHH was actually formed in 1992. *Id.*

The petitioner also argues that the Government offered perjured testimony during trial and introduced a false exhibit at retrial. *Id.* at 18. The alleged perjured testimony involves a Government witness who testified that Ms. Age remained co-owner of SLHH through 2012 based on the fact that Ms. Age's signature appeared on certain SLHH documents; the Government knew, however, that these documents were actually signed by Ms. Alverez, not Ms. Age. *Id.* Finally, the petitioner argues that an exhibit, showing large sums of money being paid to the petitioner and Ms. Age, was false because the Government introduced it without producing the underlying evidence for the exhibit. *Id.*

### 5. *Prosecutorial Misconduct – Arguing for $17.1 Million "Loss" Amount*

Finally, the petitioner alleges that the Government engaged in prosecutorial misconduct by arguing that the $17.1 million received by SLHH between 2005 and 2011 constituted the "loss" amount to be used by the Court in determining the petitioner's sentence. *Id.* at 22–24. Specifically,

---

and the amount gained through illicit activities." Doc. 335, at 2. Hill's argument in this regard is essentially the same argument that the petitioner is now claiming Hill failed to make in regards to the PSIR. *See Sentencing Hr'g Tr.* 8, Doc. 428 (arguing that "there's never been anything concrete that was backed up numerically in terms of loss").

the petitioner argues that the evidence produced at trial suggests the SLHH clients did receive some services during that time period, thus there was no fraud. *Id.*

### B.    Procedural Bar to Relief

#### 1.    *Issue Raised on Appeal*

A petitioner is procedurally barred from relief under § 2255 for issues that were raised or could have been raised on direct appeal of the underlying conviction. It is well settled in the Fifth Circuit that "issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions." *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) (citation omitted); *see United States v. Fields*, 761 F.3d 443, 466 (5th Cir. 2014) (barring § 2255 relief from claims decided on direct appeal).

In this case, the petitioner timely appealed his conviction to the Fifth Circuit arguing that the district court erred in disqualifying Fazande from serving as the petitioner's counsel.[9] *Age*, 614 F. App'x at 141, 144. In essence, the petitioner argued that there was no showing of actual or potential conflict of interest. *Id.* at 144–45; *see Pet'r's Supp. Mem.* 4–8, Doc. 512-2. The Fifth Circuit affirmed the conviction, holding that "[t]here was overwhelming record evidence of Fazande's actual and potential conflicts of interest . . . [and] while a defendant may waive a conflict of interest, 'the district court is allowed "substantial latitude" to refuse such waivers in cases of either actual or potential conflict.'" *Age*, 614 F. App'x at 144–45. Because the issue of disqualifying Fazande was raised and decided on appeal, the petitioner is barred from brining such claim in the present motion. *See Kalish*, 780 F.2d at 508.

---

[9] In the present motion, the petitioner characterizes his argument as a Sixth Amendment violation. *Pet'r's Supp. Mem.* 4, Doc. 512-2. Although this argument was not characterized as such in his appeal, the argument is the same.

### 2. *Issues Not Raised on Appeal*

When a defendant's right to appeal has been exhausted, his conviction and sentence are presumed to be fair and final. *United States v. Frady*, 456 U.S. 152, 164 (1982). Once a conviction is presumed final a defendant can only challenge the conviction "on issues of constitutional or jurisdictional magnitude and may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991) (en banc) (citations omitted). The "cause" and "actual prejudice" standard applies even when a defendant alleges a fundamental constitutional error, such as prosecutorial misconduct or a *Brady* violation. *See Murray v. Carrier*, 477 U.S. 478 (1986); *see also United States v. Murphy*, 213 F.3d 638 (5th Cir. 2000) (unpublished); *United States v. Johnson*, 85 F.3d 624 (5th Cir. 1996) (per curiam).

Here, the petitioner's allegations of prosecutorial misconduct—as discussed in allegation two, four, and five above—were not raised on direct appeal. However, the petitioner knew of the alleged misconduct prior to appeal.

For allegation number two, the relevant information was provided to the defense during discovery. Specifically, the Government produced investigative reports detailing statements provided by Ms. Johnson regarding her dealings with Dr. Kirkpatrick and Alpha Medical Solutions. *Gov't's Resp.* 10 n.8, Doc. 530. According to the Government, this information gave the defense notice of any potential liability Ms. Johnson faced pertaining to Dr. Kirkpatrick's indictment and could have cross-examined her at trial concerning such liability.[10] *Id.*

---

[10] As previously mentioned, there is no evidence that Ms. Alverez had any connection to Alpha Medical Solutions or the allegations made in Dr. Kirkpatrick's indictment. Therefore, as it relates to Ms. Alverez, there was no relevant evidence that the Government could have improperly withheld.

8

Case 3:11-cr-00105-JJB-EWD   Document 546   06/16/16   Page 9 of 11

Additionally, the petitioner knew before trial that his name was removed from the company account in 2010. First, the petitioner admitted that he removed his name from the company account himself. *Pet'r's Addendum* 1, Doc. 531 ("Petitioner signed a bank card in late 2010 removing himself from the company account entirely."). Second, on July 24, 2014, the Government provided the defense with four discs with numerous bank records received via subpoena; all bank records received by the Government were turned over to the defense. *Gov't's Resp. to Pet'r's Addendum* 2, Doc. 534.

As for allegations four and five, it is clear, based on the type of misconduct alleged and the arguments made by the petitioner, that this evidence was known to the petitioner prior to his appeal. For example, the fact that the petitioner was the sole owner of SLHH and that SLHH was formed in 1992 are facts that were within the petitioner's own knowledge before, during, and after trial. Additionally, the facts underlying the petitioner's arguments of false exhibits and the incorrect loss amount were developed during the course of the trial. At the latest, by the conclusion of the trial, the petitioner would have been aware that the underlying evidence to support the Government's exhibit had not been introduced, as well what evidence was or was not presented concerning the loss amount.

The petitioner has not shown a "cause" for failing to bring these issues of prosecutorial misconduct on direct appeal to the Fifth Circuit. The petitioner's only proffered reason is that "the court appointed attorney choose [sic] not to."[11] *Pet'r's Mot.* 6, 8, Doc. 512. Because petitioner has shown no "cause" for his procedural default, the "actual prejudice" element need not be addressed.

---

[11] "[T]he question of cause for a procedural default does not turn on whether counsel erred or on the kind of error counsel may have made," as long as counsel's assistance was not constitutionally ineffective under *Strickland v. Washington*. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Instead, . . . the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.*

9

C.       **Ineffective Assistance of Counsel**

Generally, a claim for ineffective assistance of counsel may be raised in a § 2255 motion because this claim "cannot be resolved on direct appeal when the claim has not been raised before the district court since no opportunity existed to develop the record on the merits of the allegation." *United States v. Higdon*, 832 F.2d 312, 313–14 (5th Cir. 1987) (citations omitted). To succeed on a claim for ineffective assistance of counsel, the petitioner must demonstrate that: (1) "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the range of professionally competent assistance;" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 690, 694 (1984).

To prove that counsel acted outside the range of competent assistance, under the first prong of *Strickland*, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88. There is a "strong presumption" that an attorney's representation is reasonable and, therefore, evaluation of counsel's actions must be "highly deferential." *Id.* at 689; *see Clark v. Thaler*, 673 F.3d 410, 418 (5th Cir. 2012). When evaluating counsel's actions, the Court reviews the entire course of representation; a few isolated shortcomings will not render counsel's assistance ineffective. *See Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). Finally, a Court should consider that counsel's actions may have been sound trial strategy at the time. *United States v. Culverhouse*, 507 F.3d 888, 897–98 (5th Cir. 2007).

A "reasonable probability," under the second *Strickland* prong, is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. To satisfy this prong, the defendant must also demonstrate that "the result of the proceeding was fundamentally unfair or unreliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993).

In this case, for the reasons stated in the Government's responses, the petitioner has failed to demonstrate a claim for ineffective assistance of counsel. The Court has reviewed the trial record and, considering the strong presumption in favor of competence, finds that Hill's representation was within the range of reasonably competent representation. Moreover, some of the petitioner's allegations of incompetence were choices within Hill's trial strategy discretion.

Alternatively, even if Hill's representation was not competent, the petitioner failed to demonstrate that the outcome would have been different. The Court agrees with the Government that the petitioner was convicted on overwhelming evidence, and does not believe that the potential issues identified by the petitioner indicate that the conviction was unfair or unreliable.

### IV. CONCLUSION

For the reasons stated above, the petitioner's Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255, (Doc. 512) is **DENIED.**

Signed in Baton Rouge, Louisiana, on June 15, 2016.

**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**